Good morning, and may it please the court. My name is Joseph Bethany. I am the attorney for the appellant, Joel Rivera-Clemente. On May 10th, 2013, with a trial scheduled to commence in just five days, Mr. Rivera-Clemente pleaded guilty to two counts in the District Court of Puerto Rico. The first count, which he pleaded guilty, was a count of second-degree murder, and the second count was the carrying and use of a firearm in relation to a crime of violence. Mr. Rivera-Clemente was subsequently sentenced by the District Court judge to 322 months when the plea agreement that Mr. Rivera-Clemente executed called for or contained a recommended sentence of 276 months. Based on the numerous errors that we contend that the District Court committed in terms of both the acceptance of Mr. Rivera-Clemente's guilty plea at the Rule 11 hearing, as well as the errors that it committed at the sentencing hearing, we asked the court to vacate his sentence and conviction and remand the matter to the District Court. The first matter that I would like to address with the court this morning actually has to do with Mr. Rivera-Clemente's sentencing hearing, and it deals with the procedural reasonableness of the sentence. And in particular, it's the 3553C1 issue whether the District Court, as it was required to, made specific findings of fact for the sentence that was within the applicable guideline range. Admittedly, Mr. Rivera's trial counsel did not object to this error at the time that it was committed by the District Court judge, and therefore, we concede that this court would review that under the plain error standard. Now, of course, as I just referenced, 3553C1 requires the District Court at the time of sentencing and in open court to state the reasons for imposing the particular sentence if the sentence is within the guideline sentencing range and that range exceeds 24 months. Really, there can be no dispute here that the requirements of that statute apply. And now, based on statements by this court previously, the court can't merely state in general its reasons for the sentence, but rather it must articulate why it settles on a particular point. And that articulation essentially requires the District Court to do two things. First, it has to identify discrete aspects of the defendant's behavior and link those to the 3553A goals of sentencing. Now, it's evident here that, based on a review of the sentencing transcript, that the District Court did not fulfill this objective. And interestingly, the government doesn't address 3553C1 at all in its brief in opposition to our opening brief on appeal. What's the harm that flows if there's a violation of C1? As this court has previously stated, there could be two outcomes for a violation of C1. The first outcome could be that the court could vacate the sentence for a man for resentencing if, in fact, there are, from the transcript, there are no reasons that are evident that enable the court to undertake appellate review of the sentence that was handed out. If the court finds that, in review of the transcript, that perhaps it can glean some of the rationale that the District Court relied upon for fashioning the sentence that it did, then it would review under the plain error rubric. And then what we would be looking at is whether there was error and whether my client could prove that, but for the error committed by the District Court, that he would have received a less harsh sentence than he did. And we would contend, and we do contend in the brief, that appellate review really is frustrated here by the dearth of facts and discussion engaged in by the District Court regarding why it sentenced Mr. Rivera-Clemente to where it did. The District Court engaged in a discussion with the victim's mother, talked about some of the cases that the District Court judge had handled in the past and some of the harsh sentences that it had handed down in the past, and then engaged in a very superficial discussion of Mr. Rivera-Clemente and his lack of criminal history or involvement in. And he hadn't used drugs, hadn't used alcohol, and he was lucky that he wasn't indicted for first-degree murder. Well, Mr. Rivera-Clemente actually was indicted for first-degree murder initially, but to address your point, Your Honor, what the judge actually did in engaging in, I think, what he charitably called a law school hypothetical, was he was attempting to use the evidence I think to discuss the harm in terms of the conduct in which Mr. Rivera-Clemente engaged. Now that discussion doesn't suffice under Gilman for a finding of the particular, or where he sentenced and why he sentenced in the particular place that he did under C-1. Why is it enough when he says that, right before he says what he's going to do, he gives a statement about the seriousness of the conduct, which is you don't just walk in the middle of the day and do this type of thing. And then it's a within-guideline sentence? It was, Your Honor. It was at the top end of the guidelines. So isn't, you have a serious crime, you have a judge saying, I really think this was a serious crime, nothing about the circumstances seemed to make it other than a serious crime, so I'm going to give you at the top of the guidelines for this crime. What's the problem with that? Well, I think the problem comes in terms of the discussion that the district court judge was having about the crime itself. And he analogized it to a murder-for-hire plot with Mr. Rivera's trial counsel and engaged in that hypothetical and said something to the effect of, you know, if you and I agree that we're going to have this person executed and then we carry that out, you know, isn't that the same thing that the parties here engaged in? And I think that the district court... Didn't your client initially, who was escorted off the base first, knew that the one who escorted him off the base had a gun? Metaphorically, other people said, we're going to get the gun. And doesn't that show the fact that he didn't do the shooting, he knew exactly what they were going there for, and the likelihood that that would end up with something perhaps happening? And there's no dispute about that. And that's certainly why, as Mr. Rivera's trial counsel said, that's why he pleaded guilty to the charge. Right. And so you have a within-guidelines sentence and a judge who has, yeah, it's discursive, but who has said things like, you know, you could have been indicted for first-degree murder, or you could have been charged. This is a terrible crime. You didn't do this under the influence of drugs or alcohol. You knew that something like this was likely to happen. Isn't that enough? Well, no, I don't think it is, because what I was trying to say about the hypothetical that the court was engaging in is, does it really appear to conflate the role that Mr. Rivera Clemente had relative to the murder-for-hire hypothetical that the district court judge was setting forth? And while Mr. Rivera Clemente did enter the base previously and was escorted off the base, and he alerted his friends to the fact that this new guard may have a gun, and he knew that they were going on the base to go and try to retrieve the gun, I think that's a far cry from the murder-for-hire plot that the district court judge is discussing, where the object of the conspiracy in that case is actually to commit the murder. And the object in this case is to get a gun, which you're going to use for something, probably, which isn't law-abiding. Well, that certainly is not an inaction. Isn't the object to commit a robbery while armed? I'm sorry? To commit a robbery, taking the gun, while they're armed? Yes, some of the other co-conspirators were obviously armed, yeah. Yeah, but the point that we're making, though, is that in the analogy or the hypothetical set forth by the district court judge, the object was actually the killing. That was the direct object of the crime that those folks were going to be committing. Whereas here, they were going to be committing a robbery, and a death did unfortunately occur. But look, when somebody decides to go armed to retrieve a weapon, where they've already had an interaction with a particular person, and who's alone, and you're going to go with other people, when you have guns and so forth in those circumstances, isn't it a reasonable assumption that everyone knows that somebody may get hurt? That possibility is always out there. If I could finish it. But the line that we would draw would be between what the object of the crime in the district court judge's hypothetical was versus what the aim and the unintended and certainly unfortunate consequence was here. And in our view, the district court judge was improperly relying on facts that were not in the record to sentence Mr. Rivera-Clemente to where he sentenced him to. And I think that certainly is the harm that Mr. Rivera-Clemente suffered, because given these very vague and improper statements by the district court judge prior to the sentence that he handed down, which he prefaced by saying, frankly, this is what I'm going to do, without citing any specific reason for why he was going to do what he did, that really not only renders appellate review of the reasons for the sentence difficult, but certainly establishes the harm necessary to reverse under the plain error standard. Thank you. Good morning, Your Honors. May it please the Court. Francisco de Sousa Martinez on behalf of the government. This case stems from the murder of a 28-year-old father of two for what turned out to be a fake pistol. With regards to Rivera-Clemente's sentencing claims, it is without a doubt that sentencing courts must consider all 3553 factors at the time of sentencing. However, as this Court has stated before, it need not robotically or in a mechanical manner go line by line through each of those factors during sentencing in order to comply with this mandate. The record here shows that the district court did acknowledge and consider those relevant 3553 factors in this case, including Rivera-Clemente's personal characteristics, his age, the fact that he had no criminal background, that he had lived an apparently drug-free life, and had a limited education. This was seen at the change of plea hearing during the colloquy, and at the, indeed at the sentencing hearing, the defense, I'm sorry, the judge told defense counsel that he should feel free to discuss all these factors during its advocation. What happened here was simply that the district court weighed all those factors that seemingly fell in favor of Rivera-Clemente against those that, frankly, did not, were not as paying to him in a positive light, which were the seriousness of the offense in this case. The fact that these were, that minors were involved, and the fact that the record showed that this, that this record suggested that this was not simply a one-time occurrence or a lapse in judgment by Rivera-Clemente. As for the, as for the claims regarding his, as for his claim that he did not actually have a gun at the, at the scene of the crimes, I read that they were his co-conspirators. As Judge Saul pointed out, the facts in this record show that he was the first one to go to the base, saw what appeared to him to be a legitimate firearm on the person of the security guard, and then when they were escorted out, went out and apparently went up for backup from his friends who brought those firearms. Logic dictates that if you have an intent to steal a firearm from the person of another, you're probably going to be armed, or someone in your, in your group is going to be armed in order to fulfill this, this act. As for the general substance reasonableness of the sentence here, as is clear from the record, it is a guideline sentence. It is well below the statutory maximum of life that was informed to Rivera-Clemente during the change of plea and in the plea agreement. And... I'm sorry, I lost my train of thought. Do you want to address any other issues, or? If the court, frankly, if the court doesn't have any questions, the government will rest on the briefs. I'm fine. Thank you.